IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LUIS MACIAS, #Y32629, <br><br>    Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SOURCES, INC., ANTHONY WILLS, LATOYA HUGHES, J.B. PRITZKER, CONNIE DOLCE, NICOLE BRANDT, KELLY PIERCE, KEVIN REICHERT, MOLDENHAUER, JACOB GUETERSLOH, DR. RITZ, and JANE DOE 1, <br><br>    Defendants. | Case No. 3:25-cv-00810-SPM |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

  Plaintiff Luis Macias, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Plaintiff claims that he has been denied adequate medical care for his ongoing side and shoulder pain. He seeks monetary damages and injunctive relief.

  The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are liberally construed. *Rodriguez v. Plymouth*

*Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges that he has not been given adequate medical care for an undiagnosed condition causing him side pain and shoulder pain while at Menard Correctional Center (Menard). In the Complaint, Plaintiff states the following:

Beginning in 2019, Plaintiff began complaining to medical staff about pain in his side. (Doc. 1, p. 8). One of his kidneys is smaller than the other, and Plaintiff believed at the time that his kidney issues could be the source of his pain. *Id.* at p. 8. Prior to his transfer to Menard, while he was at the Cook County Jail, his kidney condition had been monitored. *Id.* at p. 8. Medical staff at Menard, however, did not order his medical records from the Cook County Jail and did not send him to an outside facility "to check his kidneys." *Id.* at p. 8. They simply gave him Tylenol. *Id.* at p. 8.

It is not exactly clear when Plaintiff was seen by medical staff at Menard. At some point, Plaintiff had an appointment with Nurse Practitioner Moldenhauer, who told him that if his pain became worse or persisted then he should submit a sick call request. (Doc. 1, p. 8; Doc. 1-1, p. 4). Plaintiff also had an appointment with a nurse. (Doc. 1 p. 9). During the appointment, Plaintiff told the nurse that he had a history of kidney problems. The nurse told Plaintiff to submit another sick call request. *Id.* at p. 9. Plaintiff states that there is a policy in place that requires inmates to be examined by a nurse at nurse sick call three times before they can be examined by a doctor. *Id.* at p. 8-9. Plaintiff asserts that this policy resulted in a deliberate delay in his treatment. *Id.* at p. 9. He states he was repeatedly treated by nurses at sick call who were unable to diagnose or treat him. *Id.*

Plaintiff went to "several sick call sessions" from December 2019 through March 2020.

(Doc. 1, p. 9). In March 2020, labs were taken and an ultrasound on his kidney was ordered. *Id.* at p. 9. The ultrasound, however, was denied by Dr. Ritz through the collegial review process because of costs. (Doc. 1, p. 11; Doc. 1-1, p. 21). According to the exhibits, "Dr. Ritz, Wexford UM, and Dr. Siddiqui…made an alternative treatment plan to check renal function onsite. Re-present with any sign of impaired kidney function." (Doc. 1-1, p. 21).

From 2020-2025, two CT scans and two ultrasounds were performed. (Doc. 1, p. 7, 10, 11). Plaintiff was told that he had a mass in or near his stomach, but he was never given any further information about the mass or a diagnosis. *Id.* at p. 7. He remained in constant pain, and medical staff did not pursue a different course of treatment. *Id.* at p. 10. Plaintiff continued to be treated only with Tylenol. *Id.* at p. 11. Plaintiff was told that Wexford Health Sources, Inc. (Wexford) would not approve for him to be sent to a specialist or to be prescribed stronger pain medication. *Id.* at p. 11.

Plaintiff's right shoulder began to hurt him in 2023 when he would lay down in bed. (Doc. 1, p. 12, 20). He submitted "a few" sick call requests asking to be seen, but these requests were ignored. *Id.* at p. 12. He was not called to sick call because there were not enough nurses due to a Wexford policy of understaffing. *Id.* at p. 12. Plaintiff was told by Nurse Jane Doe 1 that sick call requests were "backed up for 3 weeks or longer due to understaffing." Nurse Jane Doe 1 was the "(5) day a week nurse [who] could have performed her job [and] run sick call but she chose not to do it." *Id.* at p. 13.

Plaintiff saw Nurse Nicole Brandt on or around November 26, 2023. (Doc. 1, p. 20). He informed Nurse Brandt that he had been experiencing stomach pain since 2019 and shoulder pain since 2023. *Id.* He informed her that he had written grievances that were still pending and that no one was checking on him or letting him know the results from any tests for his side pain. *Id.* Brandt

told Plaintiff that she would find out the results of his medical tests and call him back to sick call. *Id*. She also said she would refer him to see the doctor or nurse practitioner. Nurse Brandt never follow-up with Plaintiff, and he continued to have pain "in his kidney area." *Id.* at p. 21.

Plaintiff wrote an emergency grievance about the delay in receiving treatment for his shoulder pain and the undiagnosed mass and pain in his stomach that same day, on November 26, 2023, Grievance #K4-1123-1780. (Doc. 1, p. 12; Doc. 1-1, p. 12). Plaintiff's right shoulder pain had increased and especially hurt whenever his hands were cuffed behind his back. (Doc. 1, p. 13).

Although Warden Wills deemed Grievance #K4-1123-1780 an emergency shortly after filing, Plaintiff did not receive a response until April 5, 2024. (Doc. 1-1, p. 14). In the response, the director of nursing, Connie Dolce, stated that Plaintiff had "not been seen for the last two visits that he was scheduled for. He has been scheduled to be seen by a Nurse Practitioner later this week." (Doc. 1, p. 15; Doc. 1-1, p. 14). Plaintiff, however, did not see a nurse practitioner that week. (Doc. 1, p. 17).

Plaintiff also wrote another emergency grievance on February 15, 2024, Grievance #K4-0224-1000, about the lack of medical care for his shoulder pain and undiagnosed mass and pain in his stomach. (Doc. 1, p. 18). Plaintiff received a response to this grievance also on April 5, 2024, and Connie Dolce again stated that Plaintiff had been scheduled twice but not seen by a medical provider. (Doc. 1-1, p. 19). Dolce wrote that Plaintiff would be scheduled to see a nurse practitioner later that week, but he did not receive an appointment. *Id*.

When Plaintiff was not seen by a nurse practitioner that week, he then wrote a third emergency grievance on April 15, 2024, Grievance #K4-0424-1904. (Doc. 1, p. 22). Warden Wills determined that the grievance was not an emergency, and the counselor wrote that the grievance was a duplicate of Grievance #K4-1123-1780. *Id*. (*See also* Doc. 1-1, p. 5)*.* Grievance Officer

Page 4 of 19

Guetersloh recommended that the grievance be denied as a duplicate and not timely submitted to the grievance office. (Doc. 1-1, p. 5). Kevin Reichert concurred in the recommendation, and Menard staff did not take further action to resolve the ongoing denial of medical care complained of by Plaintiff in Grievance #K4-0424-1904. *Id.* (*See also* Doc. 1, p. 26).

Plaintiff wrote letters to Director Hughes and Governor Pritzker informing them that he was being denied medical treatment. (Doc. 1, p. 28). Pritzker's office responded to Plaintiff's letter on January 23, 2025, informing Plaintiff that his letter had been received, and they were working to resolve his issues. *Id.* at p. 29. (*See also* Doc. 1-1, p. 24). Plaintiff then received a letter from Warden Wills on February 27, 2025, telling him that Governor Pritzker's office had forwarded to Wills Plaintiff's letter concerning his medical care. (Doc. 1, p. 29; Doc. 1-1, p. 25). Wills informed Plaintiff that "a provider has reviewed the results of your CT scan and you have been added to the provider line to be seen for follow-up." (Doc. 1, p. 29; Doc. 1-1, p. 25).

Plaintiff was then seen by someone, but he was not told what is causing his pain or provided any information on the mass discovered in the CT scan. (Doc. 1, p. 30). He was also not given a treatment plan for his pain. *Id.* Nothing was done to treat his shoulder stiffness and pain. *Id.*

Eventually, Plaintiff was sent to physical therapy. (Doc. 1, p. 31). One day, after completing a session, when Plaintiff returned to his cell, his "shoulder locked up on him," and he was in more pain than before doing the physical therapy sessions. *Id.* Plaintiff's fingers and hand were tingling and going numb. *Id.* Plaintiff tried to continue doing his exercises and stretches, but the pain continued and even increased. *Id.* Plaintiff explained these symptoms to the physical therapist, but nothing was done. *Id.* Since the day that Plaintiff's shoulder "locked up," the pain has become excruciating, and it is difficult for him to sleep. *Id.*

Plaintiff continued to submit sick call slips and sent a letter to Connie Dolce and Warden

Wills. (Doc. 1, p. 32). He also wrote again to Director Hughes and Governor Pritzker about not receiving medical treatment for his shoulder and side pain/mass. *Id.* at p. 34. As of filing the Complaint on May 1, 2025, Plaintiff has not received adequate care for his conditions.

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following Counts:

**Count 1:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc., Anthony Wills, Latoya Hughes, J.B. Pritzker, Connie Dolce, Nicole Brandt, Kelly Pierce, Kevin Reichert, Moldenhauer, Jacob Guetersloh, Dr. Ritz, and Jane Doe 1 for denying and/or delaying adequate medical care for Plaintiff's undiagnosed side condition and associated pain.

**Count 2:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc., Anthony Wills, Latoya Hughes, J.B. Pritzker, Connie Dolce, Nicole Brandt, Kelly Pierce, Kevin Reichert, Moldenhauer, Jacob Guetersloh, Dr. Ritz, and Jane Doe 1 for denying and/or delaying adequate medical care for Plaintiff's shoulder condition and associate pain.

**Count 3:** Intentional infliction of emotional distress claim in violation of Illinois state law against Wexford, Wills, Hughes, Pritzker, Dolce, and Moldenhauer.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[1]**

## Counts 1 and 2

To plead an Eighth Amendment deliberate indifference claim, a plaintiff must allege: (1) that he suffered from an objectively serious medical condition (objective standard); and (2) that

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

the individual defendant was deliberately indifferent to that condition (subjective standard). *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). A medical condition is objectively serious if " 'a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson.' " *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.*

As to Defendant Nurse Practitioner Moldenhauer, Plaintiff asserts that beginning in 2019 he complained to "medical staff" that he was having pain in his side that may be caused by his ongoing kidney issues. (Doc. 1, p. 8, 11). He asserts that these complaints put Moldenhauer on notice about his side pain. *Id.* At some point, Plaintiff was seen by Moldenhauer who told Plaintiff that if his pain persisted or worsened, he should submit another sick call request. *Id.* Plaintiff claims that after receiving the responses to his grievances from Connie Dolce on April 5, 2024, he wrote more than once to Moldenhauer asking for a medical appointment, and he was never scheduled. *Id.* at p. 19-20. Plaintiff claims that for years Moldenhauer ignored his complaints of pain, continued to treat him only with Tylenol, and failed to provide and/or ensure he received proper diagnosis and treatment for the condition causing his side pain. *Id.* at p. 11, 27. These allegations are sufficient for Count 1 to proceed against Moldenhauer. Plaintiff does not assert any facts regarding Moldenhauer's involvement in the medical care for his shoulder pain, and so, Count 2 is dismissed as to Moldenhauer.

Count 1 will proceed against Nurse Brandt. According to the Complaint, Plaintiff saw Nurse Brandt on November 26, 2023. (Doc. 1, p. 20). During his appointment with Brandt, Plaintiff informed her that he had been complaining about side pain since 2019 and pain in his shoulder since 2023. *Id*. He let her know that he was not receiving care, despite his ongoing complaints and grievances. *Id*. Brandt told Plaintiff that she would refer him to a doctor or nurse practitioner, look into what was going on with his test results for his side condition, and call him back to sick call. *Id*. Brandt, however, did not call him back to sick call to explain his test results, and Plaintiff continued to go untreated. Given that Plaintiff had been experiencing side pain for over four years at that point, he had been told that he had a mass near or around his stomach area, and he still had not been provided effective treatment for his condition, Brandt's failure to treat and/or act to ensure Plaintiff received medical care for the condition causing his side pain could be characterized as "callous disregard" for Plaintiff's wellbeing even though she and Plaintiff only interacted on a single occasion. *See Rasho v. Jeffreys,* 22 F. 4th 703, 710 (7th Cir. 2022). Thus, Plaintiff has stated a claim against Nurse Brandt regarding deliberate indifference to the condition affecting his side.

Plaintiff has not, however, sufficiently pled facts to support a deliberate indifference claim against Nurse Brandt for his shoulder pain. He states that he started experiencing shoulder pain in 2023, he saw Nurse Brandt around November 26, 2023, and then was eventually sent to physical therapy. (Doc. 1, p. 31). Although he states he told her about his shoulder pain during the November 26 appointment, it appears that he takes issue with his side pain and that Brandt failed to schedule him for a follow-up appointment concerning his test results and further treatment for his side condition. *Id.* at p. 20. Plaintiff does not articulate the conduct he believes amounted to a constitutional violation regarding treatment for his shoulder pain, and so, Count 2 is dismissed as

to Brandt.

Plaintiff has not stated a claim against Nurse Jane Doe 1. Plaintiff claims that Nurse Jane Doe told him that the wait to be seen at sick call was three weeks or longer. (Doc. 1, p. 13). He asserts that because Menard was understaffed nurses, including Nurse Jane Doe 1, would not regularly "run sick call" resulting in his medical issues and ongoing side and shoulder pain not being addressed. *Id*. The Court cannot infer from Nurse Jane Doe 1 telling Plaintiff that there were long wait times for sick call and not regularly seeing inmates at sick call because of understaffing that she knew of and disregarded an excessive risk specifically to Plaintiff's health. Accordingly, Counts 1 and 2 are dismissed as to Nurse Jane Doe.

Counts 1 and 2 will be dismissed against Dr. Ritz. Plaintiff claims that Dr. Ritz denied the request for him to have an onsite kidney ultrasound in March 2020, and proposed an alternative treatment plan in order to save costs, which resulted in further delaying necessary treatment. (Doc. 1-1, p. 21). He also claims that between 2020 and 2023 he had two ultrasounds and even after the ultrasounds still did not receive adequate medical treatment from medical staff at Menard. *Id.* at p. 11. The few facts asserted in the Complaint do not support the inference that Dr. Ritz was motivated by costs and acted with deliberate indifference in proposing to monitor Plaintiff's renal function onsite before performing an onsite ultrasound. Plaintiff ultimately received two ultrasounds, and he does not allege any further interactions with or involvement in his medical care by Dr. Ritz. There is no indication that Dr. Ritz was aware that Plaintiff's medical conditions affecting his side and his shoulder were going untreated. Accordingly, Counts 1 and 2 are dismissed against Dr. Ritz.

Plaintiff's deliberate indifference claims against Grievance Officers Pierce and Gutersloh and Assistant Warden Reichert are also dismissed. These individuals were not personally involved

in Plaintiff's medical care, and their only connection to Plaintiff's claims is that they reviewed his grievances. Reichert and Guetersloh reviewed and denied Grievance #K4-0424-1904 and Pierce reviewed and recommended affirming Grievances #K4-1123-1780 and #K4-0224-1000. (Doc. 1-1, p. 5, 10, 16). An administrative official who reviews an inmate's grievances over the alleged misconduct of another person is not "personally responsible" for the complained-of conduct and does not incur liability in a civil rights case for reviewing or denying the grievance. Pierce, Gutersloh and Reichert also cannot be held liable because of the length of time it took them to respond to Plaintiff's grievance. The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). For these reasons, Counts 1 and 2 are dismissed against Pierce, Guetersloh, and Reichert.

While a prison official cannot be subject to liability solely for denying or mishandling a grievance, an official may be subject to liability if he or she is made aware of a specific constitutional violation via detailed correspondences from the inmate and the individual declines to take any action to address the situation. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Simply put, a prison official may not escape liability by turning a blind eye to serious harms. *Id.* at 781 ("deliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or 'turns a blind eye' to it").

Plaintiff claims that Warden Wills and Director of Nursing Connie Dolce were made aware that he was not receiving medical treatment for his conditions causing side pain and shoulder pain through both his grievances and letters. (Doc. 1, p. 29, 32). He informed Wills and Dolce that he

had not been seen by a medical provider, despite their memos/letters to him saying he would be scheduled. *Id.* at p. 32. At this point, these allegations are sufficient for Counts 1 and 2 to proceed against Wills and Dolce.

Plaintiff also sues Governor Pritzker and IDOC Director Hughes for deliberate indifference to his serious medical needs. He states that he wrote them each two letters putting them on notice that he was being denied care. A letter-writing campaign to high-ranking officials, however, is not enough to hold them liable for discrete issues with a single inmate's medical care. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (finding that writing letters to the governor and other officials like the superintendent of prisons was insufficient to form a basis for Section 1983 liability because they are entitled to delegate the provision of good medical care to prison medical staff). *See also Vance v. Rumsfeld,* 701 F.3d 193, 203 (7th Cir. 2012). Plaintiff's two letters to Governor Pritzker and Director Hughes are not sufficient to establishing the level of knowledge of Plaintiff's complaints that could support a claim for deliberate indifference to his medical conditions. Accordingly, Counts 1 and 2 are dismissed against Pritzker and Hughes.

In order to state a claim against a corporation, such as Wexford, for deliberate indifference, a plaintiff must plead that the constitutional deprivation occurred as a result of [the corporation's] express policy or custom." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir. 2002).

Plaintiff claims that Wexford's practice of understaffing the health care unit caused delays in his care. (Doc. 1, p. 3-4). Plaintiff was told by Nurse Jane Doe 1 that he would have to wait to three weeks or longer to be called to sick call because of understaffing. (*Id.* at p. 12). Plaintiff asserts that he ended up waiting three to four months to be seen at sick call. *Id.* Plaintiff was also told that he would have wait to see a doctor because there is not a full-time doctor at Menard. *Id.* at p. 5. In addition to having insufficient nurses, there is only one doctor who comes to Menard

twice a month to provide medical care to over 2,000 inmates. *Id.* at p. 5, 12. Other than seeing Nurse Practitioner Moldenhauer when he first complained of side pain, it appears that Plaintiff did not receive any follow-up appointments with a medical provider for his conditions, even after it was determined there was a mass present near his stomach area. He also claims he never received any follow-up care with a medical provider or nurse after his shoulder continued to hurt following physical therapy. (Doc. 1, p. 32). Accordingly, Plaintiff has sufficiently stated a claim against Wexford in Counts 1 and 2 for understaffing the health care unit which caused unconstitutional care for his side condition and shoulder pain.

Plaintiff will also be able to proceed on Counts 1 and 2 against Wexford for their practice of instructing or training of medical staff to only prescribe over the counter pain medicine. (*See* Doc. 1, p. 4). Plaintiff claims that his pain continued to be treated with only Tylenol, despite its ineffectiveness and that he was told that Wexford would not approve for him to have "anything stronger." *Id.* at p. 11. Plaintiff has stated an Eighth Amendment claim against Wexford based on their medication policy that resulted in unnecessary prolongment his pain in his side and shoulder.

Plaintiff's other policy claims against Wexford, however, are dismissed. Plaintiff states that Wexford has several practices that result in delayed and deficient care. According to Plaintiff, Wexford trains medical staff to engage in conduct that delays effective care such as treating inmates as if they are lying and scheduling inmates for follow-up appointments that they know will be delayed or canceled. (Doc. 1, p. 4). Plaintiff also asserts that Wexford does not use electronic medical records that would enable medical staff to easily track medical care such as appointments, test results, and grievance responses. *Id.* at p. 4-5. Plaintiff states he was told that Wexford has a policy in which they require inmates to see a nurse at sick call at least three times prior to being seen by a doctor. (Doc. 1, p. 5). And finally, Plaintiff claims that Wexford's collegial

review process is used to deny recommended treatment because of cost. *Id.* at p. 11.

Plaintiff does not provide "factual content that allows the court to draw the reasonable inference" that these practices or policies caused the alleged constitutional deprivation. *McCauley v. City of Chi.*, 671 F.3d 611, 615 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Plaintiff does not allege that he specifically was treated as a malingerer during any of his interactions with medical staff or that paper medical records were the reason he was not scheduled more quickly with a nurse, provider, or specialist. He also does not present facts to support the conclusion that Wexford's three sick call policy contributed to his delayed care. He does not specify in the body of the Complaint how many times he was seen at sick call prior to having an appointment with Nurse Practitioner Moldenhauer, but according to the exhibits, he was seen twice, not three times (once for left side pain and then once of back pain). (Doc. 1-1, p. 4). Additionally, according to his allegations, he later continued to be seen at sick call, more than three times, and still, he did not have an appointment with a nurse practitioner or doctor, not because of a 3 sick call policy but because of understaffing. (*See* Doc. 1, p. 9). Thus, he has not sufficiently pled facts connecting how a 3 sick call policy caused his constitutional deprivation of inadequate medical care.

And finally, he does not connect the collegial review process to his own delay and/or denial of care. As previously stated, through collegial review Dr. Ritz opted to "check [Plaintiff's] renal function onsite," prior to performing an ultrasound. An ultrasound was performed later that year. *Id.* at p. 11. Because Plaintiff's assertions regarding these additional Wexford policies are conclusory, they are improperly pled and dismissed.

**Count 3**

Plaintiff claims that Wexford, Wills, Hughes, Pritzker, Dolce, and Moldenhauer:

> Turned a blind eye to the broken system of providing medical care to the inmates housed at Menard and throughout IDOC have been made aware of the system being

> broken with the class action lawsuit in *Lippert v. Baldwin*, that was originally filed in 2010 and put these Defendants on notice that this environment existed and instead of taking steps to fix these problems that are causing these breakdowns, they have turned a blind eye to them and have allowed them to exist.

(Doc. 1, p. 35). He states that they knew that their inactions would cause him to suffer an intentional infliction of emotional distress. *Id.* at p. 6-7, 35.

Under Illinois law, to state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants either intended to inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress; and (3) the defendants' conduct in fact caused severe emotional distress. *McGreal v. Vill. Orland Park,* 850 F.3d 308, 314 (7th Cir. 2017). *See also Bailey v. City of Chic.*, 779 F.3d 689, 696–97 (7th Cir. 2015); *Schiller v. Mitchell*, 828 N.E.2d 323, 333 (Ill. App. Ct. 2005) (citing *Pavlik v. Kornhaber,* 761 N.E.2d 175 (Ill. 2001)).

Plaintiff's assertions of intentional infliction of emotional distress are conclusory, and the facts as pled do not describe any conduct on the part of Defendants that could be characterized as "extreme and outrageous." The Court cannot plausibly infer that because of a class action lawsuit filed in 2010, Defendants knew there was a high probability that Plaintiff would receive deficient care years later that would cause him severe emotional distress. For these reasons, Count 3 is dismissed.

### OFFICIAL CAPACITY CLAIM

Plaintiff brings his claims against Defendants in their official and individual capacities. (Doc. 1, p. 36). To the extent that Plaintiff is seeking injunctive relief, Defendant Wills, the Warden of Menard, is the most appropriate official capacity defendant. *See generally Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7th Cir. 2011). Allowing Plaintiff to proceed with an official capacity claim against the remaining Defendants would be redundant. Therefore, the official

capacity claims against these Defendants are dismissed with prejudice. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (state officials named in their official capacities may not be sued for monetary damages).

### MOTION FOR PERMISSION TO ADD GRIEVANCE TO COMPLAINT

Plaintiff seeks to add an exhibit to the Complaint showing that he exhausted his administrative remedies and placed Defendants on notice that he was not receiving adequate medical care. (Doc. 12). The motion is **DENIED.** Plaintiff cannot amend the Complaint by adding exhibits in a piecemeal fashion.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 2), which is **DENIED**.[2] In an attempt to find an attorney on his own, Plaintiff states that he wrote to over ten attorneys asking for assistance, but he has not received any responses. *Id.* at p. 3. Plaintiff provides copies of the letters he wrote to four of the law firms. The Court, however, cannot determine that Plaintiff has made sufficient efforts to find a lawyer based on this limited information. Thus, Plaintiff has failed to meet his threshold burden of demonstrating attempts to recruit counsel on his own, prior to seeking assistance from the Court.

The Court also finds that Plaintiff is capable of proceeding pro se, at least for now. Plaintiff states that he needs an attorney to represent him because he does not know English well and is relying on other inmates to draft his filings and explain court documents. He also does not have access to an updated law library and the law library staff are not knowledgeable in researching, civil procedure, or Eighth Amendment claims. Despite these obstacles, the Court will not recruit Plaintiff counsel to represent him. This case is in the very early stages. Defendants have not been

---

[2] In evaluating the Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

served, and extensive argument and legal research are not required. *See Kadamovas v. Steven*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel... cannot be gauged."). With the assistance of other inmates, Plaintiff has demonstrated an ability to construct coherent sentences and relay information to the Court. Plaintiff, therefore, appears competent to try this matter without representation at this juncture. Once discover has commenced, if Plaintiff has significant difficulty, he may refile his motion.

Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to include additional information about his efforts, such as when he contacted each firm, and also include supporting documentation, such as the letters from the attorneys who declined representation or copies of his payment vouchers for postage.

## MOTION TO CLARIFY

The Motion to Clarify is **GRANTED**. (Doc. 20). The case was reassigned to Magistrate Judge Sison in error. The Notice Terminating Judge Assignment has been stricken, and this case remains with the undersigned.

## DISPOSITION

**IT IS HEREBY ORDERED** that the Complaint survives preliminary review pursuant to 28 U.S.C. § 1915A. **COUNT 1** shall proceed against Wexford, Wills, Dolce, Brandt, and Moldenhauer and is **DISMISSED without prejudice** against Hughes, Pritzker, Pierce, Reichert, Guetersloh, Ritz, and Jane Doe 1. **COUNT 2** shall proceed against Wexford, Wills, and Dolce and is **DISMISSED without prejudice** against Hughes, Pritzker, Brandt, Pierce, Reichert, Moldenhauer, Guetersloh, Ritz, and Jane Doe 1. **COUNT 3** is **DISMISSED without prejudice.** Because there are no surviving claims against Hughes, Pritzker, Pierce, Reichert, Guetersloh, Ritz, and Jane Doe 1, the Clerk of Court is **DIRECTED** to terminate them as defendants.

The Motion for Recruitment of Counsel (Doc. 2) is **DENIED**. The Motion for Permission to Add Grievance to Complaint (Doc. 12) is **DENIED**.

The Clerk of Court shall prepare for Wexford, Wills, Dolce, Brandt, and Moldenhauer the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, his or her last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Because this suit addresses medical claims, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. See 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** October 28, 2025

       *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.